UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOMAS BENJAMIN SAPON BAQUIAX and SANTOS PUBAQUIAX, <br><br>                         **Plaintiffs,** <br><br> -against- <br><br> ABASUSHI FUSION CUISINE INC. d/b/a ABA ASIAN FUSION CUISINE, LIANG HE XIE a/k/a SAMMY XIE and LIANG PING XIE a/k/a WILSON XIE, <br><br>                         **Defendants.** | 16-CV-2997 (ALC)(DCF) <br><br> **OPINION AND ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

       Plaintiffs Tomas Benjamin Sapon Baquiax ("Baquiax") and Santos Pubaquiax ("Pubaquiax") bring this suit under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") alleging, *inter alia*, minimum wage and overtime violations by Defendants Liang Ping Xie ("Ping") and Liang He Xie ("He"), brothers who allegedly owned and operated the restaurant Abasushi Fusion Cuisine Inc. ("Abasushi"). Defendants move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is **DENIED**. Additionally, the Court hereby **DISMISSES** Plaintiff Pubaquiax's causes of action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**BACKGROUND**

**I.     Procedural History**

      This case was originally brought by three plaintiffs—Plaintiffs Baquiax, Pubaquiax and Florencio Arguello Tentle ("Tentle")—on April 22, 2016, against Defendants He, Ping and Abasushi. (*See generally* Compl., ECF No. 1.) Since this case has progressed through the

litigation process, there have been several changes of counsel which are relevant to the present motion.

      i.     *Defendants' Motion to Withdraw as Attorney*

On May 5, 2017, counsel for Defendants moved to withdraw from representation (ECF No. 24), which was granted by Magistrate Judge Debra C. Freeman (ECF No. 25).  No new notice of appearance was entered on behalf of any of the Defendants.  As such, the Court directed Abasushi to show cause why a default judgment should not be entered against it since a corporation cannot appear in federal court *pro se* and directed the parties to file a status report regarding next steps in the case.  (ECF No. 27.)  Plaintiffs subsequently filed a status report indicating that discovery had stalled since the withdrawal of Defendants' counsel, but that Defendants He and Ping intended to proceed *pro se*.  (ECF No. 28.)  On September 8, 2017, Judge Freeman issued a Report & Recommendation recommending that Defendant Abasushi be declared in default.  (ECF No. 32.)  This Court granted the default judgment on November 14, 2017.  (ECF No. 38.)  Defendants Ping and He retained new counsel as of September 23, 2020.  (ECF No. 50.)

      ii.    *Plaintiff Tentle's Attorney's Motion to Withdraw*

Counsel for Plaintiffs requested to be withdrawn as counsel for Plaintiff Tentle because he had not been communicative with his attorneys. (ECF No. 70).  Judge Freeman granted this motion on March 23, 2022 (ECF No. 74.)  The Court then directed Tentle to show cause why his causes of action should not be dismissed for failure to prosecute.  (ECF No. 80.)  Tentle did not respond

to the order to show cause and his claims were dismissed his claims without prejudice on October 6, 2022. (ECF No. 101.)

      iii.      *Plaintiff Pubaquiax's Attorney's Motion to Withdraw*

Counsel for Plaintiffs filed a letter on May 19, 2022, stating that they also wished to withdraw from representation from Plaintiff Pubaquiax because he too had not been communicative with his attorneys. (ECF No. 83.) The Court ordered Pubaquiax to respond in writing to the motion (ECF No. 84); however, Pubaquiax failed to respond to the Court's order by the June 14, 2022 deadline. On October 6, 2022, the Court granted counsel's motion to withdraw from his representation and directed Pubaquiax to provide his address and telephone number to the *Pro Se* Office, warning that failure to respond could result in dismissal of his causes of action. (ECF No. 101.) To date, Plaintiff Pubaquiax has neither provided his contact information nor otherwise appeared in this action.

**II.    Relevant Facts**

The following is based on the Court's review of the depositions, declarations, exhibits, pleadings and other evidence submitted by the parties.

Plaintiff Baquiax alleges that he was employed by Defendants at a restaurant called Abasushi[1], located at 1588 York Avenue, as a delivery worker from May 20, 2014 until

---

[1] It is unclear from the record what the restaurant at 1588 York Avenue was called over time. Defendant Ping stated that the restaurant was called Abasushi when he purchased it. (Ping Deposition, ECF No. 88-1 at 16:2.) The restaurant had previously been a Chinese restaurant, but he decided to add sushi to the menu. (*Id.*) Plaintiff refers to the restaurant as Abasushi throughout the time he worked there in 2014 and 2015. (Baquiax Deposition, ECF No. 88-3 at 8:14.) However, Defendant He did not refer to the restaurant by that name, and instead called the restaurant Blue Ginger. (He Deposition, ECF No. 88-2 at 20:21.) Additionally, Defendant He suggests that when he purchased the restaurant in 2016, he changed the name to Poke Fresh. (He Deposition, ECF No. 88-2 at 20:10–25.) Further complicating matters, the time records for Baquiax attached to Defendant He's declaration are for a location called "China Spice NYC". (He Decl., Ex. 10, ECF No. 87-10 at 6.)

approximately December 2015.  (Baquiax Decl., ECF No. 96 ¶ 2.)  In addition to his delivery responsibilities, Baquiax maintains that he was also required to perform non-tipped and non-delivery duties as part of his employment.  (*Id.* ¶¶ 2–3; Baquiax Deposition, ECF No. 88-3 at 8:14.)  He asserts that he was hired by Defendant Ping (who he knew as Wilson Xie) and Defendant He (who he knew as Sammy Xie.)  (Baquiax Decl., ECF No. 96 ¶ 4.)  Plaintiff states that while he worked for Defendants, there were five or six other workers at the restaurant.  (*Id.* ¶ 7–8.)

In Baquiax's July 2021 deposition, he said that he had been hired by Defendant Ping who told him that he was the owner of the restaurant.  (Baquiax Deposition, ECF No. 88-3 at 9:19–24.)  He also stated that both Defendant Ping and He would set his work schedule.  (*Id.* at 15:11–14.)  When initially asked about his allegations during the deposition, Baquiax stated that he could not recall the specifics of his claims (*e.g.*, how long he normally worked and how much he was paid) because of the number of years that had elapsed since he had filed the Complaint.  (*See, e.g.*, *id.* at 13:13–15 ("Q: What time did you leave everyday? A: Like, what time I left? Got out of work? I - - I don't remember.  Like I said, it's been years."); *id.* at 13:25–14:2 ("Q: How much did they pay you every week? A: I also do not remember.").)  Baquiax also could not identify the names of any of the other employees at the restaurant and could not recall whether he had any days off while he worked for the restaurant.  (*Id.* at 16:21–24, 15:21–22.)  However, after refreshing his recollection with the Complaint, Baquiax stated that the allegations as stated in the Complaint were correct and recalled the details of his wage and hour claim, such as the number of hours he worked, how long he worked for Defendants and how much he was paid.  (*Id.* at 18:21–20:25.)

Plaintiff asserts that he regularly worked approximately 78.50 hours per week from May 2014 to June 2015 (*id.* ¶ 12), and 73 hours per week from July 2015 to December 2015 (*id.* ¶ 13.)  Despite these hours, Plaintiff was paid a fixed salary of $300 per week from May 2014 to June

2015 and $350 per week from July 2015 to December 2015. (*Id.* ¶¶ 15–16.) He says that he was paid weekly in cash by a female cashier, who he believed was He's wife, and sometimes by He himself. (*Id.* ¶ 9; Baquiax Deposition, ECF No. 88-3 at 21:5–7.) Plaintiff argues that he was never given breaks for meals and that Defendants never informed him that his tips were being used to offset his weekly wages. (Baquiax Decl., ECF No. 96 ¶¶ 19–20.) Plaintiff also says that Defendants withheld $10 of his daily tips for fees charged by Seamless and credit card companies. (*Id.* ¶ 22.)

As discussed more fully below, Defendant Ping and Defendant He deny that they were Baquiax's employers. Defendant Ping maintains that he purchased the restaurant in September 2013. (Ping Deposition, ECF No. 88-1 at 13:25–14:2.) Instead of hiring new workers, Ping stated that he chose to retain the two employees who had previously worked at the restaurant. He maintained that he did not hire any other delivery workers and did not hire Baquiax. (*Id.* at 17:14–22, 22:12–24, 33:23–25.) Around this time, Defendant He worked at the restaurant on a part time basis. (He Deposition, ECF No. 88-2 at 19:11–15.)

According to Defendant Ping, he sold his stake in the restaurant in or around May 2014 to an individual named Jake or "Jackie" Chan who owned and operated a company called Blue Ginger Inc. ("Blue Ginger"). (Ping Deposition, ECF No. 88-1 at 14:3–6.) Defendant He states that he did not own or manage Blue Ginger, and that only worked for them on a part time basis. (He Decl., ECF No. 87 ¶ 5.) Defendant He concedes that while Mr. Chan operated the restaurant, he may have hired some "Mexicans" to work as part-time employees, but that He did not know

5

any of the workers individually and did not know any of their names. (He Deposition, ECF No. 88-2 at 38:4–16.)

Defendant He says he only took a leadership role in the restaurant after he purchased the restaurant with his own company—Blue Choy Inc. ("Blue Choy"). (He Decl., ECF No. 87 ¶ 11.) Defendant He maintains that he only hired Chinese workers (as opposed to Baquiax who is Guatemalan) and that he did not hire delivery workers because they relied on third-party delivery applications such as Uber Eats, DoorDash and Grubhub. (He Decl., ECF No. 87 ¶ 12.)

## **STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *See Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson*, 477 U.S. at 248 (holding that a fact is material if it would "affect the outcome of the suit under the governing law"). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating

the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation marks omitted).

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citing *Anderson*, 477 U.S. at 255)). Courts may not assess credibility, nor may they decide between conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252).

When considering a motion for summary judgment, a district court "must also be mindful of the underlying standards and burdens of proof ... because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Maco v. Baldwin Union Free Sch. Dist.*, 249 F. Supp. 3d 674, 678 (E.D.N.Y. 2017) (quoting *SEC v. Meltzer*, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (internal quotation marks omitted), *aff'd*, 726 F. App'x 37 (2d Cir. 2018)). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." *Id.* (quoting *Meltzer*, 440 F. Supp. 2d at 187) (internal quotation marks omitted).

## **DISCUSSION**

**I.      Motion for Summary Judgment**

Defendants Ping and He moved for summary judgment against Plaintiff Baquiax on June 13, 2022. (ECF No. 86.) Defendants argue that (1) Plaintiff has failed to produce any admissible

evidence of the existence of an employer-employee relationship and (2) Plaintiff has failed to produce admissible evidence of uncompensated wages. (*See generally* Defs.' Mem., ECF No. 90.) Plaintiff Baquiax opposes the motion, arguing that Defendants are not entitled to summary judgment based on Plaintiff's proffered evidence, chiefly his own testimony. (*See generally* Pl.'s Mem., ECF No. 97.)

      A.  Employer-Employee Relationship

First, Defendants argues that Plaintiff Baquiax has not produced admissible evidence of an employer-employee relationship. (Defs.' Mem., ECF No. 90 at 8–9.) Principally, Defendants argue that Plaintiff has not provided any evidence that he was employed by either Defendant because he has no evidence that either Defendant owned the restaurant while he worked there. (*Id.*)

For the reasons set forth below, the Court finds that there are genuine disputes of material fact regarding ownership of the restaurant and whether Defendants were Plaintiff Baquiax's employers, rendering summary judgment on this question inappropriate.

"Employment for FLSA purposes is 'a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'" *Sarikaputar v. Veratip Corp.*, No. 17-CV-814 (ALC), 2020 WL 4572677, at *2 (S.D.N.Y. Aug. 7, 2020) (quoting *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 141–42 (2d Cir. 2008)). "As the Second Circuit has recognized, the determination of joint employer status is rarely appropriate to make at the summary judgment stage, '[b]ecause of the fact-intensive character of the determination of joint employment.'" *Hart v. Rick's Cabaret Intern., Inc.*, 967 F. Supp. 2d 901, 941 (S.D.N.Y. 2013) (quoting *Barfield*, 537 F.3d at 144 (2d Cir. 2008)); *see also Redzepagic v. Hammer*, No. 14-CV-9808 (ER), 2017 WL 780809, at *11 (S.D.N.Y. Feb. 27, 2017) ("The question of whether an

individual is an employer under the FLSA is a mixed question of law and fact and individual employer liability is therefore rarely suitable for summary judgment.") (internal quotations and citations omitted).

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The Supreme Court has emphasized that this is an expansive definition with 'striking breadth.'" *Olvera v. Bareburger Group LLC*, 73 F. Supp. 3d 201, 204 (S.D.N.Y. 2014) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). A plaintiff may have more than one employer, in which case, "all joint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the [FLSA]." 29 C.F.R. § 791.2(a).

The ownership of the restaurant over time is not clear from the factual record. According to his deposition, Defendant Ping purchased a Chinese restaurant called Abasushi at 1588 York Avenue in September 2013. (Ping Deposition, ECF No. 88-1 at 15:23–16:12.) Ping contends that while he purchased the restaurant, he retained the two employees who had previously worked at the restaurant and says that he did not hire any delivery workers. (*Id.* at 17:14–22, 22:12–24.) He maintains that he never hired Plaintiff Baquiax. (*Id.* at 33:23–25.)

Defendant Ping stated that he sold the restaurant to a person named Jake or "Jackie" Chan in May 2014 (around the same time that Baquiax alleges he began working at the restaurant) because the restaurant was no longer profitable. (Ping Deposition, ECF No. 88-1 at 14:3–6.) Defendant He states that neither he nor his brother know Mr. Chan's real name and that they only called him by his English name. (He Deposition, ECF No. 88-2 at 20:23–21:3.) There are no official documents in the record memorializing Defendant Ping's sale of the restaurant to Mr. Chan and/or Blue Ginger in May 2014. Indeed, this timing is contradicted by Defendant Ping's

interrogatory responses where he stated that Blue Ginger owned the restaurant beginning on July 15, 2013. (Robinson Decl., Ex. D, ECF No. 95-4.) Ping's timeline is further contradicted by a liquor license in his name for Abasushi which was registered on September 25, 2013 and expired on November 30, 2015. (Robinson Decl., Ex. E, ECF No. 95-5 at 1.)

Defendant He states that he began working for Blue Ginger on a part-time basis but maintains that he was not an owner or manager of the company. (He Decl., ECF No. 87 ¶ 5.) Defendants point to the employment records they produced to show that Baquiax was in fact employed by Blue Ginger and not employed by either of the entities Defendants Ping or He owned and operated. (He Decl., Ex. 10, ECF No. 87-10 at 2–3.) These records include a copy of Plaintiff's I.D. card, time records from July 2015 through August 2015, and several employment attestations signed by Baquiax which indicate that he worked at Blue Ginger Inc. (He Decl., Ex. 10, ECF No. 87-10 at 2–3.) Defendant Ping maintains that he only took on an ownership and/or managerial role at the restaurant after he purchased it with Blue Choy on February 6, 2016. He Decl., ECF No. 87 ¶¶ 6–7, 11.)[2] He maintains that he never employed Plaintiff. (He Deposition, ECF No. 88-2 at 37:5–10.)

Plaintiff Baquiax's testimony contradicts Defendants' assertion that they were not his employer and satisfies the *Carter* elements required to show an employer-employee relationship under the FLSA. "[W]hether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'" *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). The economic reality test asks "whether the alleged

---

[2] The document memorializing the transfer from Blue Ginger to Blue Choy lists a "Shen Zheng" as the principal for Blue Ginger rather than Mr. Chan. (He Decl., Ex. 8, ECF No. 87-8.)

employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). Plaintiff asserts that he was hired by Defendant Ping and Defendant He. (Baquiax Decl., ECF No. 96 ¶ 4.) At his deposition, Baquiax said that both Defendants would set his work schedule and "let [him] know what hours I needed to work." (Baquiax Deposition, ECF No. 88-3 15:13–14, 21:10–14.) He also said that Defendant He would sometimes give him his weekly pay in cash. (*Id.* at 21:7.) He referred to both Defendant He and Ping as his "boss" because they would tell him what to do and direct his work duties. (*Id.* at 21:19–22.)[3]

Defendants ask the Court to discount this testimony because Baquiax was unable to initially answer basic questions about his employment history at his deposition. (Defs.' Mem., ECF No. 90 at 9.) Defendants also ask the Court not to credit Baquiax's affidavit filed in opposition to this motion because it contradicts his deposition testimony. (*Id.*) While it is true that where a plaintiff's deposition testimony so contradicts the complaint or a plaintiff's declaration, a court may find that there the plaintiff has not actually demonstrated any genuine disputes of fact, *see e.g., Toyama v. Hasaki Rest., Inc.*, No. 13-CV-4892 (AKH), 2014 WL 7234602, at *4 (S.D.N.Y. Dec. 18, 2014), that is not the case here. Neither the Complaint nor Plaintiff's affidavit contradict Plaintiff's deposition testimony. Rather, Plaintiff testified initially that he did not recall the specifics of his allegations due to the length of time that had elapsed since he filed the Complaint. Once his

---

[3] Plaintiff tries to establish Defendant He's ownership of the company during the relevant time period through a purported response to an interrogatory in which he stated that he was an owner and/or manager of the Board of Directors for Abasushi. (Robinson Decl., Ex. G, ECF No. 95-7.) However, this interrogatory response is neither signed nor sworn, as required under Federal Rule of Civil Procedure 33, and is thus inadmissible and cannot be considered for summary judgment. *Baker v. 221 N. 9 St. Corp.*, No. 08-CV-03486 (KAM)(MDG), 2010 WL 3824167, at *1 (E.D.N.Y. Sept. 23, 2010).

11

recollection was refreshed, Plaintiff stated that his memory was consistent with his allegations in the Complaint and confirmed the essential elements on his claim. Thus, the Court is free to credit his testimony regarding his employment relationship with Defendant He and Ping, even in the absence of other evidence supporting his allegations. *See Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348, 361 (S.D.N.Y. 2006), *aff'd*, 629 F.3d 276 (2d Cir. 2010) ("That many of [plaintiff's] concrete assertions are uncorroborated is irrelevant at the summary judgment stage.")

Resolving disputes in Plaintiff Baquiax's favor as the non-moving party, there are genuine factual disputes such that a reasonable fact finder could conclude that Defendants were in an employee-employer relationship with Baquiax. Plaintiff's testimony that he worked for Defendant Ping and He, including that Defendant Ping hired him and told him that he owned the restaurant, is sufficient to create a dispute about material facts at issue in this litigation. Moreover, the fact that Defendants did actually produce employment records for Plaintiff could also persuade a reasonable jury that Defendants were in fact Plaintiff's employer, even if the employment records relate to the Blue Ginger entity.

On a motion for summary judgment, courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *Jeffreys*, 426 F.3d at 553–54 (2d Cir. 2005); *see also Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (on summary judgment, the court does not "weigh the evidence and determine the truth of the matter but [] determine[s] whether there is a genuine issue for trial.") The credibility of Plaintiff's testimony—particularly when he was unable to remember basic elements of his claim unprompted—may be probed at trial and assessed for credibility by the jury. *See Vasquez v. Ranieri Cheese Corp.*, No. 07-CV-464 (ENV)(VVP), 2010 WL 1223606, at *16

(E.D.N.Y. Mar. 26, 2010) ("Ultimately, whether the plaintiff's account is credible is a determination left to the fact-finder.")

Accordingly, the Court finds that there are genuine factual disputes regarding whether Defendant He and Defendant Ping were in an employer-employee relationship with Plaintiff. *See Sarikaputar v. Veratip Corp.*, No. 17-CV-814 (ALC), 2020 WL 4572677, at *3 (S.D.N.Y. Aug. 7, 2020); *see also Redzepagic v. Hammer*, No. 14-CV-9808 (ER), 2017 WL 780809, at *11 (S.D.N.Y. Feb. 27, 2017).[4]

B. <u>Uncompensated Wages</u>

Next, Defendants argue that Plaintiff has failed to produce admissible evidence that he performed work for which he was not compensated. (Defs.' Mem., ECF No. 9–12.) Again, Defendants point to Baquiax's faltering deposition testimony where he could not remember the number of hours he worked or the amount he was paid without his attorney refreshing his recollection with the allegations in the Complaint. (*Id.*)

To establish liability under the FLSA and NYLL, a plaintiff must prove that he "performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (citations omitted). "Courts applying *Kuebel* look to whether plaintiffs have raised a just and reasonable inference of the amount of overtime worked in the context of their opposition to an employer's summary judgment motion, thereby necessitating a trial." *Id.* (internal quotations and citations omitted). Generally, "the dispute as to the precise amount of [a plaintiff's]

---

[4] Because the Court finds that there are material factual disputes regarding the employer-employee relationship between Plaintiff and Defendants, the Court will not reach the question of whether Defendants could be found liable as successors in interest.

uncompensated work is one of fact for trial." *Alvarado v. GC Dealer Servs. Inc.*, 511 F. Supp. 3d 321, 366 (E.D.N.Y. 2021) (quoting *Kuebel*, 643 F.3d at 364).

Here, there is sufficient evidence in the record on which a reasonable jury could conclude that Plaintiff performed uncompensated work. Plaintiff Baquiax alleges that he was employed by Defendants as a delivery worker from May 20, 2014 until approximately December 2015, but that he was also required to perform other work non-tipped and non-delivery work, such as cleaning and preparing food, in addition to his delivery responsibilities. (Baquiax Decl., ECF No. 96 ¶¶ 2–3; Baquiax Deposition, ECF No. 88-3 at 8:14, 20:2–10, 21:15–18.) Plaintiff contends that he regularly worked between 73 and 78.50 hours per week but only paid between $300 and $350 per week. (Baquiax Decl., ECF No. 96 ¶¶ 12–16; Baquiax Deposition, ECF No. 88-3 at 20:18–22.) Plaintiff also alleges that Defendants withheld $10 of his daily tips for fees charged by Seamless and credit card companies. (Baquiax Decl., ECF No. 96 ¶ 22; Baquiax Deposition, ECF No. 88-3 at 14:3–9.) Plaintiff's testimony is supported by his time records produced by Defendants. (He Decl., Ex. 10, ECF No. 87-10 at 6–8.) Although the records are for a limited period from June 29, 2015 through August 2, 2015, the hourly rate listed on the records is well below the mandatory minimum wage. (*Id.*)

Defendants have proffered no evidence rebutting these allegations beyond their assertion that they never employed Baquiax. As the Court noted in the previous section, while Baquiax's seeming unpreparedness for his deposition and lack of memory of his allegations may be probed at trial, those inferences are not appropriate on a motion summary judgment. *See Canela-Rodriguez v. Milbank Real Est.*, No. 09-CV-6588 (JSR), 2010 WL 3701309, at *2 (S.D.N.Y. Sept. 20, 2010) (conflicting testimony as to hours worked must be resolved in favor of the non-moving party on a summary judgment motion). Accordingly, the Court concludes that there is sufficient

evidence to raise a genuine dispute of material fact regarding Plaintiff's uncompensated work, rendering summary judgment inappropriate. *See Alvarado*, 511 F. Supp. 3d at 366.

## II.     Failure to Prosecute

On May 19, 2022, counsel for Plaintiffs filed a letter motion seeking to withdraw from representation of Plaintiff Pubaquiax because he was no longer cooperating in his representation. (ECF No. 83.)  The Court ordered Pubaquiax to respond in writing to the motion (ECF No. 84); however, Pubaquiax failed to respond to the Court's order by the June 14, 2022 deadline.  On October 6, 2022, the Court granted counsel's motion to withdraw from his representation and directed Pubaquiax to provide his address and telephone number to the *Pro Se* Office, warning that failure to respond could result in dismissal of his causes of action.  (ECF No. 101.)  To date, Plaintiff Pubaquiax has neither provided his contact information nor otherwise appeared in this action.  Accordingly, the claims as to Plaintiff Pubaquiax are dismissed without prejudice for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **DENIED**.  The Clerk of Court is respectfully requested to terminate the pending motion at ECF No. 86 and terminate Plaintiff Pubaquiax from the docket.

Within 30 days of this order, the parties are directed to file a joint status report regarding next steps and indicating whether they would like to request a settlement conference before Judge Valerie Figueredo.

**Dated:  March 27 2023**
       New York, New York

ANDREW L. CARTER, JR.
United States District Judge